UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY E. JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No.  13-cv-04484-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; AND REMANDING CASE FOR FURTHER PROCEEDINGS** |

Rodney E. Jackson ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant").  Pending before the Court are the parties' motions for summary judgment.  Having considered the papers filed by the parties and the administrative record, the Court GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for summary judgment, and REMANDS this case for further proceedings consistent with this order.

## I.  BACKGROUND

### A.  Plaintiff's Social Security benefits

On September 9, 2003, the Social Security Administration ("SSA") determined that Plaintiff was disabled as of August 30, 2001, based on his mental retardation and his affective mood disorder.  (Administrative Record ("AR") at 80-81, 119.)  The SSA determined that Plaintiff's mental retardation met the criteria for listing 12.05C.  (*Id.* at 119.)

On August 25, 2010, the SSA determined that Plaintiff's disability ceased on August 1, 2010 because his condition had improved to the point where he was no longer disabled.  (*Id.* at 82, 88-91.)  The SSA discontinued Plaintiff's benefits as of October 1, 2010.  (*Id.* at 82, 88-91.)  On September 9, 2010, Plaintiff sought reconsideration of that determination, which was affirmed on

October 19, 2011.  (*Id.* at 92-93, 131-133.)

**B.     The administrative hearing**

On October 25, 2011, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 135.)  That hearing was held on April 23, 2012.  (*Id.* at 43-67.)  Plaintiff, who was represented by counsel, testified at the hearing.  (*Id.* at 46, 47.)  Linda Berkeley, a vocational expert ("VE") also testified at the hearing by telephone.  *(Id.)*

1.     Plaintiff's testimony

Plaintiff testified that he last worked as a desk clerk for about two months but had to leave the position because of increasing back pain that limited his ability to sit, stand, and travel up and down stairs.  (*Id.* at 59.)  Before that, Plaintiff worked as a food coordinator for approximately two to three years.  (*Id.* at 60.)  He also worked as a cook at a barbeque restaurant for seven years and did some childcare work before that.  *(Id.)*

Plaintiff stated that he can "lift a gallon of milk, but that it hurts [his] back when [he] pours [his] water, so [he] tr[ies] not to lift too much."  (*Id.* at 61.)  He testified that he can stand for about 30 minutes, walk for about 20 minutes, and sit for about 20 minutes.  *(Id.)*

Plaintiff described his typical day as follows.  He wakes up in the morning, takes his medicine, and looks out his window for about 30 to 40 minutes before he watches the news.  (*Id.* at 62.)  He stands, goes outside, and tries to walk around the block.  *(Id.)*  He tries to see a few friends so that he "can wake up and be joyful for the day instead of being so much [*sic*] stressed out."  *(Id.)*  When he returns home after his walk and visiting with friends, he eats lunch, watches television, and takes a nap.  *(Id.)*  Plaintiff tries to read sometimes, but he is not "too good of a reader."  *(Id.)*  He goes to the pool when he can "because the water relaxes [him] a little bit, so like pool therapy."  *(Id.)*  According to Plaintiff, his therapist told him it would "help [him] out a little bit better than just sitting and standing."  *(Id.)*

Plaintiff stated that he does not cook.  (*Id.* at 63.)  He'll make an egg sandwich if he gets hungry, but otherwise, his girlfriend or his aunt help him.  *(Id.)*  He does not go grocery shopping, do the dishes, or his own laundry.  *(Id.)*  He does not participate in any hobbies.  *(Id.)*  He testified that he used to go to car shows and ride and build bikes, but he "can't do any of that no more."

2

*(Id.)*

Plaintiff indicated that he takes four medications for his high blood pressure and OxyContin and over-the-counter Tylenol for his pain.[1] *(Id.)* When asked whether his medications adequately controlled the pain, Plaintiff responded "[i]t controls it a lot, yes. . . . It helps me out more than if I didn't have it." *(Id.* at 65.) He testified that without his medications, the pain "might be like a 9 or 10," which decreases to "maybe a six or a five" when he is medicated. *(Id.* at 68.) He stated that he feels pain in his lower back, in the bottom of his buttocks, on the side of his legs, and in his foot. *(Id.* at 69.) He also explained that he has a cyst on his foot, which reappeared after his doctors drained it.[2] *(Id.)*

Plaintiff also testified that he uses a cane when he walks or stands and that he lies down for approximately half of the day because it takes the pressure off of his back. *(Id.* at 69.) Sometimes, he even lies down to eat. *(Id.)* He stated that sees Dr. Labuguen every month or every other month, vists a nutritionist every other month, and attends pain management classes once a week. *(Id.* at 71.)

### 2. The VE's testimony

A VE also testified at the hearing by telephone. *(Id.* at 75, 78.) She classified Plaintiff's work as a cafeteria attendant as medium work, and his job as a front desk clerk as light work, though Plaintiff performed it at the sedentary level. *(Id.)*

The ALJ asked the VE whether an individual who can lift 10 pounds, sit for six hours in an eight-hour day, and stand and walk for two hours in an eight-hour day would be able to perform any of Plaintiff's past work. *(Id.)* The VE responded that an individual with that residual functional capacity could work as a desk clerk "as [Plaintiff] performed it," which would permit the full range of sedentary unskilled work. *(Id.)* The ALJ also asked the VE whether that same job could be performed by an individual who was able to lift 10 pounds and complete an eight-

---

[1] The record reflects that Plaintiff's pain stems from a work-related back injury he suffered in August 2001. AR at 273.

[2] MRI results indicated that the painful mass on Plaintiff's foot was "consistent with [a] ganglion cyst." *Id.* at 467.

3

hour workday if given the option to alternate between sitting and standing, as needed, in 30-minute increments. (*Id.* at 75-76.) The VE responded that such an individual could perform the desk clerk job "as [Plaintiff] performed it." (*Id.* at 76.)

Plaintiff's attorney also asked the VE to consider certain hypotheticals that included limitations identified by Plaintiff's treating physician. (*Id.* at 77-78.) The first hypothetical involved an individual who could (1) occasionally lift and carry 10 pounds, (2) frequently lift and carry less than 10 pounds, (3) stand or walk for less than two hours in an eight-hour workday, (4) use a cane for balance, walking, and standing, (5) occasionally use hand or foot pedals to push or pull, (6) occasionally climb ramps, stairs, ladders, ropes, and scaffolds, (7) occasionally balance and kneel, (8) never crouch, crawl, or stoop, (9) occasionally reach in any direction, (10) required a sit stand option, (11) should not work around machinery, heights, or other hazards, (12) would need to take two-half days off per month for pain management classes, and (13) would need to have limited contact with the public. (*Id.* at 77.) In response to that hypothetical, the VE responded that those limitations would preclude all work. (*Id.*) She stated that the key factor that would preclude all work was the "reaching at the occasional level." (*Id.* at 78.)

Counsel then asked a second hypothetical involving an individual with nearly the same limitations but without the reaching limitation and with a limitation on concentration and pace. (*Id.*) The VE responded and if that hypothetical individual was going to be off-task 10 to 15 percent of the time compared to the average worker, that would preclude all work. (*Id.*) She stated that "10 percent would be limit." (*Id.* at 79.)

### C. The ALJ's decision

On May 24, 2012, the ALJ issued an unfavorable decision. (*Id.* at 17-28.) The ALJ followed an eight-step sequential process[3] to determine whether Plaintiff remained disabled. (*Id.*

---

[3] That eight-step sequential process is as follows:

> (1) Is the claimant engaging in substantial gainful activity? If so, the claimant's disability has ended. If not, proceed to step 2.
> (2) Does the claimant have an impairment or combination of impairments that meets or equals a listed impairment? If so, the claimant continues to be disabled. If not, proceed to step 3.
> (3) Has there been medical improvement? If medical improvement has occurred

4

at 17-28.)

He made the following findings. The most recent favorable medical decision, the comparison point decision ("CPD"), that established Plaintiff's disability was dated September 9, 2003. (*Id.* at 21.) At the time of the CPD, Plaintiff's medical determinable impairment was mental retardation, a listed impairment as defined in section 12.05C of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 22.) Plaintiff had not engaged in substantial gainful activity through October 1, 2010. *(Id.)* The medical evidence established that, as of October 1, 2010, Plaintiff's medically determinable impairments included chronic low back pain and hypertension. *(Id.)* Since October 1, 2010, Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *(Id.)* Medical improvement had occurred as of October 1, 2010. *(Id.)* That medical improvement was related to the ability to work because, as of October 1, 2010, Plaintiff's CPD impairments no longer met or medically equaled listing 12.05C. *(Id.)* As of October 1, 2010, Plaintiff continued to have a severe impairment or combination of impairments, but nonetheless had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (*Id.* at 23.) He could perform his past relevant work, and this work did not require him to perform any tasks precluded by his residual functional capacity. (*Id.* at 26.)

The ALJ further found that Plaintiff was 44 years old on October 1, 2010, meeting the definition of a "younger individual." (*Id.* at 27.) He determined that Plaintiff has at least a high

---

proceed to step 4. If not, proceed to step 5.
(4) If there has been medical improvement, is it related to the claimant's ability to work? If so, proceed to step 6, if not, proceed to step 5.
(5) If there has been medical improvement, do any exceptions apply? If not, then the claimant's disability continues. If so, proceed to step 6.
(6) Is the claimant's impairment or combination of impairments severe? If not, the claimant's disability has ended. If so, proceed to step 7.
(7) What is the claimant's residual functional capacity, and does it preclude the claimant's past relevant work? If it does not preclude claimant's past relevant work, then the claimant's disability has ended. If it does preclude claimant's past relevant work, proceed to step 8.
(8) If the claimant's residual functional capacity allows the claimant to perform other work, then the claimant's disability has ended. If not, the claimant's disability continues.

20 C.F.R. § 404.1594(f).

school education and is able to communicate in English. *(Id.)* He did not consider transferability of job skills material to the determination of disability because the Medical-Vocational Rules directly supported a finding of no disability irrespective of whether Plaintiff had transferable job skills. *(Id.)* The ALJ also determined that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff, as of October 1, 2010, "was able to perform a significant number of jobs in the national economy." *(Id.)* Based on these findings, the ALJ concluded that Plaintiff's disability ended on October 1, 2010. *(Id.)*

Plaintiff requested that the Appeals Council review the ALJ's unfavorable decision. (*Id.* at 15.) The Appeals Council denied review on August 27, 2013, and the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1-6.)

### D.   Plaintiff's action for judicial review

Plaintiff filed his complaint in this Court on September 27, 2013, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) His motion for summary judgment followed on March 3, 2014. (Pl.'s Mot. Summ. J. ("Pl.'s Mot."), Dkt. No. 13.) The Commissioner filed her cross-motion and opposition on April 30, 2014. (Def.'s Mot. Summ. J. & Opp'n ("Def.'s Opp'n"), Dkt. No. 16.) Plaintiff filed his reply on June 11, 2014. (Pl.'s Reply, Dkt. No. 19.)

## II.   LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the decision is 1) based on legal error or 2) not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that undermines the Commissioner's decision. *Id.* "Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198

(9th Cir. 2008). The court, however, may not affirm the Commissioner's decision "simply by isolating a specific quantum of supporting evidence." *Id.* (internal quotations and citations omitted). Furthermore, the court's review is limited to the reasons the ALJ provided in the disability determination. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The court "may not affirm the ALJ on a ground upon which the he did not rely.").

## III.   ANALYSIS

Plaintiff moves for summary judgment, seeking a remand for payment of benefits, or in the alternative, a remand for further proceedings. (Pl.'s Mot. at 4.) He argues that the ALJ (1) improperly rejected the opinion of Plaintiff's treating physician, (2) erred when he did not comply with 20 C.F.R. § 404.1529 in evaluating Plaintiff's pain testimony, and (3) did not comply with Social Security Ruling ("SSR") 02-1p when considering Plaintiff's obesity. (*Id.* at 7, 12, 15.)

### A.   The ALJ improperly rejected the opinion of Plaintiff's treating physician.

A treating physician's opinion is entitled to more weight than the opinion of a non-treating physician. 20 C.F.R. § 404.1527(c)(1)-(2). It is entitled to controlling weight if well-supported and consistent with the other substantial evidence in the record. *Id.* § 404.1527(d)(2). When a treating doctor's opinion is not contradicted, an ALJ may reject it only for "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (internal quotations and citation omitted). But when a treating or an examining physician's opinion is contradicted by the opinion of another doctor, an ALJ may reject it based on "specific and legitimate reasons supported by substantial evidence in the record . . . ." *Id.* (internal quotations and citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Dr. Ronald Labuguen treated Plaintiff from December 2006 to April 2012. (*See* Pl.'s Mot. at 7; *see, e.g.*, AR at 448, 528.) In a July 2011 medical source statement, Dr. Labuguen opined that Plaintiff could (1) occasionally lift or carry 10 pounds, (2) frequently lift or carry less than 10 pounds, (3) stand or walk for less than two hours in an eight-hour workday, (4) use a cane for

balance, walking, and standing, (5) occasionally climb ramps, stairs, ladders, ropes, and scaffolds, (6) occasionally balance and kneel, never crouch, crawl, or stoop, (7) occasionally reach in any direction, and (8) should not work around machinery, heights, or other hazards. (AR at 516-519.)

Dr. Labuguen provided an amended medical source statement on April 20, 2012. (*Id.* at 558-561.) In that statement, he identified additional limitations. (*Id.* at 559.) He indicated that Plaintiff would have to periodically alternate between sitting and standing to relieve pain or discomfort. *(Id.)* He also stated that he had observed Plaintiff alternate between sitting and standing while in the clinic waiting room and in the exam room. *(Id.)*

The ALJ gave Dr. Labuguen's opinion "minor weight." (*Id.* at 26.) He considered it to be "unsupported by objective evidence, specifically back X-rays which show minimal findings." *(Id.)* In contrast, he placed "great weight" on the opinions of the state agency consultants, finding their opinions, which they provided after having an opportunity to evaluate Plaintiff, "consistent with the objective evidence" and "consistent with the record as a whole." *(Id.)*

Plaintiff argues that, contrary to the ALJ's finding, many treatment notes provide objective evidence of his pain. (Pl.'s Mot. at 11.) On this ground, he contends that while the ALJ's reasons for rejecting Dr. Labuguen's opinion may have been specific, they were not legitimate. *(Id.)* He maintains that Dr. Labuguen's opinion is entitled to controlling weight. (*Id.* at 12.)

In opposition, the Commissioner argues that the ALJ properly weighed the medical evidence. (Def.'s Opp'n at 2, 3.) She notes that the ALJ cited a November 2006 lumber spine examination that revealed unremarkable findings and a July 2011 lumbar spine radiology series that showed only mild disc space narrowing, good alignment, and an impression of mild degenerative changes of the lumbar spine. (*Id.* at 4.) She argues that these results are inconsistent with Dr. Labuguen's opinion that Plaintiff was completely disabled and unable to work. *(Id.)*

The record as a whole, however, substantiates Dr. Labuguen's opinion. A consultation request, dated September 8, 2003, notes the findings obtained during an August 2002 physical examination: "decompression of LLS; narrowing of spinal canal quite significant. ability to stand likely to deteriorate; stenosis. cl showed past improvement PNT therapy. MRI showed degenerative changes w/fact arthropathy in LS." (AR at 290.) The consultation request also notes

8

the results of a July 2003 consultative examination, which showed: "spinal injury L4-5. exam showed spinal contour, some increase lordotic curve LS. tenderness to palpatation lumber paraspinal muscles w/hypertonic musculature of region. gait normal. LS fkex 75%, ext 75%, rot R/L 100%, lat bend R/L 100% motor strength normal. subj finding consistant [*sic*] w/objective. cemd assess med." (*Id.*)

A November 2009 treatment note is similarly informative: "back: decreased ROM in all directions, forward flexion to 30 deg, hyperext to 5 deg, side flexion to 30 deg bilat, twisting to 60 deg bilaterally. +SLR L causing pain radiating down side of L leg. . . ." (*Id.* at 306.) Even in his consultative evaluation, on which the ALJ placed "great weight," Dr. Frank Chen noted that "[p]revious x-rays and MRI studies show possible degenerative changes." (*Id.* at 347.) Dr. Chen also noted, however, that "[n]o reports [were] available." (*Id.*)

In addition, while the July 2011 x-ray notes on which the ALJ relied revealed "mild degenerative changes of the lumbar spine, narrowing of the neuroforamina of L4-5, and no evidence of acute injury," they also indicated that "[t]here is mild osteophytosis of the anterior endplates of L3 and L4." (*Id.* at 480.) At no point did the ALJ give his interpretation of these findings, nor did he explain why these findings conflicted with Dr. Labuguen's opinion.

On this record, then, the ALJ's reason for rejecting Dr. Labuguen's opinion, i.e., that the opinion was unsupported by objective evidence, is not legitimate. The ALJ shall reconsider the opinion and assign it proper weight on remand. To that end, a medical expert may be necessary to explain how Plaintiff's condition, as documented in the record, affects his ability to work.

**B.     The ALJ erred when he evaluated Plaintiff's pain testimony.**

In evaluating a claimant's testimony regarding the severity of his symptoms, an ALJ must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that his impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show

that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted).

If a claimant meets this first prong and there is no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of his symptoms. *Id.* When an ALJ finds a claimant's testimony unreliable, the ALJ "must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citations omitted). It is "not sufficient for the ALJ to make only general findings . . . ." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (ALJ required to point to specific facts in the record which undermine a claimant's complaints).

Here, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR at 25.) He also determined that "[t]he credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record." *(Id.)* He noted that Plaintiff received routine conservative treatment for his back, foot, and left knee pain and stated that objective diagnostic studies and clinical findings did not corroborate Plaintiff's limitations. *(Id.)* He also indicated that Plaintiff's back pain was stable while Plaintiff was on medication. *(Id.)*

Plaintiff argues that the ALJ erred at the second step of his credibility determination by focusing too narrowly on the objective medical evidence. (Pl.'s Mot. at 12, 13.) The Court agrees. The relevant section of the regulations states:

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

20 C.F.R. § 404.1529(c)(2).

SSR 96-7p similarly provides, in pertinent part:

> 3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator

10

must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

      4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p, 61 Fed. Reg. 34483-01, at *34485 (July 2, 1996).

Here, however, the ALJ did not adhere to these authorities. Instead, he relied almost exclusively on the lack of objective medical evidence. (*See* AR at 25.) Even if it were permissible to do so, the record contains the objective medical evidence the ALJ found lacking. *See* discussion *supra* Part III.A. Moreover, the ALJ's statement that Plaintiff followed a conservative treatment regimen is unsupported by the record. Treatment notes reflect that Plaintiff consistently takes OxyContin, attends weekly pain management classes, participates in physical therapy, and does pool exercises to alleviate his pain. (*See, e.g.*, AR at 383-460.) Furthermore, while the ALJ considered Plaintiff's pain to be stable while he was on medication, the record is also replete with documentation of Plaintiff's consistent complaints of pain. (*See, e.g.*, AR at 383-460.)

Based on this, the Court agrees that the ALJ's credibility determination narrowly focused on a few observations and incidents rather than the entire record as a whole. The ALJ's reasons for discounting Plaintiff's pain testimony are thus legally insufficient. The ALJ shall, therefore, revisit his credibility determination on remand, this time taking into account the entire record as a whole.

**C.**    **The ALJ's evaluation of Plaintiff's obesity was free of legal error.**

SSR 02-1p provides, in pertinent part:

When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the

11

> presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity. Generally, we will not purchase a consultative examination just to establish the diagnosis of obesity.

SSR 02-1p, 67 Fed. Reg. 57859-02, at *57861 (Sept. 12, 2002).

Plaintiff argues that the ALJ committed legal error when he did not evaluate his obesity in accordance with SSR 02-1p. (Pl.'s Mot. at 15.) He states that his body mass index ("BMI") was 37 on June 28, 2011, qualifying him as obese. *(Id.)* On that basis, he asserts:

> Therefore it simply doesn't matter that Mr. Jackson and his doctors have not specifically alleged or noted limitations caused by obesity, because the medical record clearly documents obesity. Rather than simply dismiss obesity as a factor in Mr. Jackson's limitations, the ALJ should have provided discussion and analysis, using his own judgment, as to whether obesity causes functional limitations. In sum, the ALJ's cursory evaluation of obesity violated SSR 02-1p, and was therefore legal error.

*(Id.)*

Plaintiff asserts that "the medical record clearly documents obesity." *(Id.)* He does not, however, identify any of the functional limitations he suffers as a result of the condition, and he similarly fails to identify which of those the ALJ declined to discuss. *(Id.)* Indeed, the only references to obesity in the record concern referrals to a nutritionist "for obesity/weight control." (*See, e.g.*, AR at 301, 303, 305.) Thus, to the extent that the ALJ's evaluation of Plaintiff's obesity did not comply with SSR 02-1p, Plaintiff has not shown why that constitutes legal error in this case. The Court, therefore, finds that if the ALJ committed any error in this part of his disability determination, it was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (court may not reverse an ALJ based on an error that is harmless, that is, an error which would not have altered the ALJ's decision); *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (ALJ's RFC determination was not erroneous where administrative record did not contain any functional limitations resulting from the claimant's obesity that the ALJ failed to consider).

### D.     Remand for further proceedings is appropriate in this case.

The Ninth Circuit has articulated "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits." *See Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The standard is met where "(1) the record has been fully developed and further administrative proceedings would serve no

useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* (footnote and citations omitted).  If, however, "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled" a remand for further proceedings is appropriate, "even though all conditions of the credit-as-true rule are satisfied." *Id.* at 1021.

Here, Plaintiff argues that if Dr. Labuguen's opinion is credited as true, then the opinion, combined with the VE's responses to hypotheticals based on the limitations Dr. Labuguen ascribed to Plaintiff, establish his disability.  (Pl.'s Mot. at 16.)  Alternatively, Plaintiff argues that remand would allow the ALJ to properly consider and address Dr. Labuguen's opinion.  (*Id.* at 17.)  According to Plaintiff, this is why further administrative proceedings would serve a useful purpose.  (*Id.* at 17.)

The Court agrees that in this case, further proceedings would serve a useful purpose.  On remand, the ALJ shall properly consider Dr. Labuguen's opinion, assign the opinion proper weight, obtain necessary medical expert testimony, and revisit his adverse credibility determination in light of the entire record as a whole.  Accordingly, remand for further proceedings is appropriate.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED, the Commissioner's motion for summary judgment is DENIED.  Pursuant to sentence four of 42 U.S.C. § 405(g), this is case is REMANDED to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: 03/05/2015

_____
KANDIS A. WESTMORE
United States Magistrate Judge